```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MICHIGAN
                      SOUTHERN DIVISION
```

KARL BURNETT,

       Plaintiff,

v.                                                      Case Number: 05-74260

CITY OF WARREN, PAUL KELLEY,           HON. MARIANNE O. BATTANI
HENRY PIECHOWSKI, RANDALL
RICOTTA, MICAHEL TOREY, and certain
other unidentified police officers, against
each individually named defendant in his
individual and official capacity,

       Defendants.
_____/

**OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

     Before the Court is Defendants' Motion for Summary Judgment (Doc. #20). The Court heard oral argument on January 24, 2007. At the conclusion of the hearing, the Court took this matter under advisement. For the reasons that follow, Defendants' motion is **GRANTED**.

**I. STATEMENT OF FACTS**

     While on evening patrol January 22, 2004, Defendant Police Officer, Paul Kelley, noted a black Ford Crown Victoria approaching him from behind. Kelley estimated the car to be traveling at 55 to 60 miles per hour in a 45 miles per hour zone. Def.'s Ex A., Preliminary Exam Tr., p. 4. Officer Kelley believed the car to be a fellow officer's because he saw a police antenna, a post light on the side of the vehicle, a license plate reading 357 22 with a state of Michigan emblem between the two groupings of

numbers, along with the words, "State Owned." Id., p. 5. Kelley became suspicious after he noticed a baseball cap with either "police" or "sheriff" written on it and a sheriff badge decal located in the rear window. Id. Kelley states that he had 10 or 15 seconds to make these observations. Pl.'s Ex. C, Kelley Dep., p. 24. After Kelley ran the plate, he discovered that a private citizen, Plaintiff, Karl Burnett, owned the vehicle. By the time Defendant learned this information, "the vehicle was no longer in sight." Def.'s Ex. A, p. 5-6.

After Kelley arrived back at the police station, he telephoned Plaintiff. Plaintiff admitted he had been in the area earlier. Defendant asked Plaintiff whether Plaintiff was a police officer. Burnett responded that he was a Reserve Deputy Sheriff for Wayne County. Id. p. 6. Plaintiff denied driving a police vehicle,[1] denied having a license plate with the State of Michigan seal on it, and denied that the plate included the words "State Owned." Id., p. 6.

Officer Kelley subsequently contacted the Wayne County Sheriff's Office and verified that Plaintiff was a reservist at the station. Id., p. 11. Kelley also learned that Burnett had been spoken to before "for having red and blue lights on his personal motorcycle." Defs.' Ex. B, p. 2. Following this conversation, Officer Kelley talked to a Sergeant at Livonia Police Department. Sergeant Warden confirmed that Burnett had been a reservist, but he had been terminated. Plaintiff claims he voluntarily left Livonia,

---

[1] During his deposition, Plaintiff testified that he purchased the Crown Victoria in 2004, from a dealership that was selling former police vehicles. Plaintiff purchased the automobile because the car was cheap and had four doors making it more child friendly. Id., p.32. Plaintiff also claims that a friend placed the state of Michigan outline on Plaintiff's license plate. Id., pp. 36, 38-39.

when he transferred to Wayne County.

Officer Kelley completed a Police Report of the incident. Id. In the report, Kelley observed that Plaintiff's license plate "appeared to be a slightly different blue color." Id. Kelley also reported that "[t]he plate also read 'State Owned' on the bottom. . ." Id. Kelley characterized the crime as "Fraud-Impersonation." Id. Despite the use of an image-enhancing technique to verify the alterations made to the license plate, the evidence was inconclusive. See Prelim. Exam. Trans., p. 10. Detective Ricotta received the report after some time and "made the decision to proceed [with charges], based upon the allegations in the report." Pl.'s Ex. F, pp. 12, 16.

Plaintiff was charged with altering/forging a license plate. After voluntarily turning himself in, Plaintiff was arrested and arraigned. At the end of Plaintiff's preliminary exam on March 2, 2004, the Judge dismissed the charge.

## II. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact.  See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002).  "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue.  FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002).  "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict."  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986).  The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor.  See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)(citation omitted)(quoting Black's Law Dictionary 881 (6th ed. 1979)).  To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [nonmovant's] evidence is merely colorable, or is not significantly

4

probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50.  "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  The evidence itself need not be the sort admissible at trial.  Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000).  However, the evidence must be more than the nonmovant's own pleadings and affidavits.  Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001).  The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant.  Anderson, 477 U.S. at 252.

### III.  ANALYSIS

Plaintiff seeks relief under federal and state law.  In Plaintiff's response brief, he agreed to dismiss all claims against the City of Warren, Henry Piechowski, Randall Ricotta, and Michael Torey.  Accordingly, the Court considers only those claims brought against Officer Kelley.

Plaintiff's November 11, 2005, Complaint alleges claims of false arrest/ false imprisonment (Count I) , intentional infliction of emotional distress (Count II), malicious prosecution (Count III), abuse of process (Count IV), gross negligence (Count V), and violations of his constitutional rights (Counts VI and VIII).  Although it is unclear from the Complaint whether Plaintiff pursues each of these claims as to Defendant Kelley, the Court discusses each basis of relief below.

### A. Federal Claims

Plaintiff pursues his federal constitutional claims under 42 U.S.C. § 1983. It provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Under the language of the statute, to succeed on a § 1983 claim, a plaintiff must prove that a person deprived him of a federal right and that person acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). There is no dispute that Kelley was acting under color of state law. The federal rights at stake include freedom from unreasonable seizure and the right to due process of law.

### 1. Qualified immunity

The parties dispute whether the doctrine of qualified immunity shields Officer Kelley from suit. Qualified immunity is an affirmative defense that shields government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

In Saucier v. Katz, 533 U.S. 194, 200 (2001), the United States Supreme Court articulated a two-prong test to determine whether an officer-defendant is entitled to

qualified immunity. The first prong requires the reviewing court to inquire whether the facts, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." Id., at 201. The court must "concentrate at the outset on the definition of the constitutional right and [then] determine whether on the facts alleged, a constitutional violation could be found." Id., at 207. If a constitutional violation could be found, the second prong requires the court to decide whether a reasonable official would, at the time the act was committed, understand that his conduct violated that right. Id., at 201. A government official will be entitled to immunity, provided his conduct does not amount to a violation of a clearly established right of which a reasonable person would have known. Harlow, 457 U.S. at 818. A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation that he confronted." Saucier, 533 U.S. at 202.

The parties do not address whether a constitutional violation occurred. For purposes of this motion, the Court assumes that it has. There is no question that an arrest without probable cause to believe a crime has been committed violates the Fourth Amendment. Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir.1990). In order for the arrest to survive constitutional scrutiny, Kelley must have had probable cause to believe that Burnett committed the offenses charged. See Hunter v. Bryant, 502 U.S. 224, 228 (1991) (holding that the defendant officers were entitled to qualified immunity "if a reasonable officer could have believed that probable cause existed" to make the arrest).

In making the determination, the court must decide whether, "at that moment [of filing the report leading to the arrest], the facts and circumstances within [Kelley's]

7

knowledge and of which [he] had reasonably trusty information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964).  Actual probable cause is not necessary for an arrest to be objectively reasonable.  Indeed, it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable.  Von Stein, 904 F.2d at 579 (citations, internal ellipses, and internal quotations omitted).  Thus, in applying the qualified immunity test in the context of a claim of an unlawful arrest, this Court "must determine whether reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest Plaintiff." Id.

Burnett was charged with altering his plate "with fraudulent intent" in violation of MICH.COMP.LAWS § 257.257.   At the time Kelley prepared the incident report, he had ample reason to believe that Burnett had altered his license plate.  Burnett admitted that his plate had been altered to the extent that an outline of the state of Michigan had been added between the numbers on his plate.  Although Burnett denied having the words "State Owned" on his plate during the telephone interview, Kelley also had reason to disbelieve Burnett.  Kelley had observed the words, observed the similarity of Plaintiff's car to a police vehicle, the model, color, a post light on the left side and the sheriff's emblem on the rear window.  In fact, Kelley was so confident that Plaintiff's vehicle was a police vehicle, Kelley never pulled over the vehicle.  Further, Kelley had information that Plaintiff had been counseled about his use of red and blue lights on his motorcycle.  Kelley also observed what he believed was an alteration to the color of the license plate.  The judge assessing the probable cause advised Burnett that he has "escaped by a hair

from facing a felony." Pl.'s Ex. H at 27.

Further, there is no evidence that Kelley made the contested statements[2] knowingly and intentionally or with reckless disregard for the truth. Salmon v. Schwarz, 948 F.2d 1131, 1139-41 (10th Cir.1991); see Franks v. Delaware, 438 U.S. 154, 171-72 (1978). Kelley conducted an investigation into the incident. At most he was mistaken about what he had seen. Accordingly, the Court finds as a matter of law, that reasonable officers could have believed that probable cause existed to believe that Plaintiff had altered his plate to appear to be a police officer.

### 2. Fourteenth Amendment claim

The Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property without due process of law." A substantive due process claim may lie for conduct that "shocks the conscience," but, here, Kelley's conduct does not, as a matter of law, "shocks the conscience." Therefore, Plaintiff's federal substantive due process claim fails as a matter of law.

### B. State Law

In addition to Plaintiff's federal claims, he asserts violations of state law. Specifically, Plaintiff advances claims of false arrest, malicious prosecution, abuse of process, intentional infliction of emotional distress, and gross negligence. The Court discusses the merits of each below.

---

[2]In this instance, it is not even clear that "his account" was a false statement. Plaintiff's proof is a picture of his license plate presumable taken some time after the incident occurred.

### 1. FALSE ARREST

Under Michigan law, probable cause to arrest depends on whether the facts available to the police would have justified a fair person of average intelligence in believing that the subject had committed a felony. Brewer v. Perrin, 349 N.W.2d 198 (Mich. Ct. App. 1984). Probable cause is not capable of being precisely defined; rather, it is a commonsense concept dealing with practical considerations of everyday life that must be viewed from the perspective of reasonable and prudent persons, not legal technicians. Ornelas v. United States, 517 U.S. 690, 695-696 (1996). The guilt or innocence of the person arrested is irrelevant. Peterson Novelties, Inc v. City of Berkley, 672 N.W.2d 351 (Mich. Ct. App. 2003). In assessing the existence of probable cause in this case, the Court is mindful that Kelley was "under no obligation to give any credence to 'Burnett's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." Criss v. City of Kent, 867 F.2d 259, 263 (6th Cir. 1988)

Pursuant to Smith v. Michigan, 333 N.W.2d 50 (Mich.Ct. App.1983), immunity is available to police officers only when actions constituting intentional torts were justified under the circumstances. For the reasons identified by the Court in its discussion of qualified immunity, the Court finds Kelley's actions were justified. Accordingly, the Court finds Plaintiff's claim fails as a matter of law.

### 2. MALICIOUS PROSECUTION

To state a prima facie case of malicious prosecution, the plaintiff must prove: (1) prior proceedings terminated in favor of the present plaintiff; (2) absence of probable cause for those proceedings; (3) malice; and (4) a special injury that flows directly from the prior proceedings. Payton v. City of Detroit, 536 N.W.2d 233 (Mich. Ct. App. 1995).

An action for malicious prosecution is proper against a police officer if the officer knowingly swears to false facts in a complaint, without which there is no probable cause. Id. An officer who makes a full and fair disclosure to the prosecutor is not subject to an action for malicious prosecution. Id.

Plaintiff cannot satisfy the element of malice as a matter of law. Kelley made a full and fair disclosure: he included in the report that Plaintiff denied that the words, "State Owned" appeared on the plate. Pl.'s Ex. B, copy of the report. Kelley did not conceal any information obtained in his investigation. There is no dispute that Plaintiff altered his license plate in that an outline of the state was added. There is no dispute that Kelley had only 15-20 seconds to observe Plaintiff's car. Kelley additionally believed that the plate was a different shade of blue. Although further investigation could not confirm Kelley's impressions, the Court finds that the inclusion of this information in the report does not constitute malice. Kelley's investigation revealed that Plaintiff had been counseled in the past regarding the use of red and blue lights on his motorcycle. Kelley had no reason to doubt his impressions. Further, Kelley also contacted COMET to obtain enhanced pictures of the vehicle for evidentiary purposes. His conduct was objectively reasonable under the circumstances and cannot, as a matter of law, support a claim for malicious prosecution.

### 3. Abuse of process.

To recover on a claim of abuse of process, the plaintiff must plead and prove an ulterior purpose coupled with an act in the use of process that is improper in the regular prosecution of the proceeding. Friedman v. Dozorc, 312 N.W.2d 585, 594 (Mich. 1981). An improper motive alone is insufficient; there must be some corroborating act to

establish the ulterior motive. Bonner v. Chicago Title Ins Co., 487 N.W.2d 807, 812 (Mich. Ct. App. 1992). Consequently, standard and legitimate use of process, even with bad intent, does not constitute abuse of process. Meehan v. Michigan Bell Telephone Co., 436 N.W.2d 711, 726 (Mich. Ct. App. 1989) (quoting Spear v. Pendill, 130 N.W. 343 (Mich. 1911)). The misconduct required to establish an abuse of process claim is not premised on wrongful procurement or initiation of proceedings, but rather the utilization of process for a purpose other than that which it was designed to accomplish. Meehan supra (quoting Moore v. Michigan Nat'l Bank, 117 N.W.2d 105 (Mich. 1962)).

Although Plaintiff does not identify what Kelley's ulterior purpose was, Plaintiff assert that purpose is revealed because Kelley refused to recant his testimony at the preliminary hearing, even after a photograph of Plaintiff's car was shown.

Even crediting Plaintiff's version of the facts, the conduct reflects at most that Kelley was confused about the plate. An action for abuse of process "lies for the improper use of the process after it has been issued, not for maliciously causing it to issue." Rowbotham v. DAIIE, 244 N.W.2d 389, 391 (Mich. Ct. App. 1976) (citations omitted). The tort generally consists of "some form of extortion," whereby the process is used "to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it." 3 Restatement Torts, 2d, § 682, p 475. There is no act by Kelley showing that he attempted to extort something from Plaintiff separate and apart from the relief sought in the criminal proceedings. Compare Meehan supra (offer to drop existing criminal charges to coerce the plaintiff to name his source and institution of additional charges thereafter); Three Lakes Ass'n v. Whiting, 255 N.W.2d 686 (Mich. App. 1977) (offer to dismiss action without receiving damages if the plaintiff

would drop all opposition, proper and improper, to a building project). Here, Plaintiff failed to allege or provide evidence of the subsequent act through which Kelley derived a benefit from the misuse of process. Therefore, the Court agrees with Defendants that this cause of action fails as a matter of law.

### 4. Intentional Infliction of Emotional Distress (IIED)

To establish IIED, a plaintiff must demonstrate (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. Haverbush v. Powelson, 551 N.W.2d 206, 209 (Mich. Ct. App. 1996). Liability for the intentional infliction of emotional distress "has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Doe v. Mills, 536 N.W.2d 824, 833 (Mich. 1995) (citation omitted). The test is whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous!'" Roberts v. Auto-Owners Ins. Co., 374 N.W.2d 905, 908 (Mich. 1985).

Michigan court have rejected claims were a defendant (albeit not a police officer) simply files a complaint with the police. See Hall v. Pizza Hut of Am., Inc., 396 N.W.2d 809, 812 (Mich. Ct. App.1986) (finding no evidence of intent to cause the plaintiff to suffer emotional distress where the defendant did nothing more than file a complaint with law enforcement officials; Novosel v. Sears, Roebuck & Co., 495 F.Supp. 344, 347 (E.D. Mich. 1980) ("when the actor does not more than insist upon his own legal rights, no liability will be imposed.:); Laney v. Blue Cross Blue Shield of Mich., 2003 WL

1343284 at *2 (Mich. Ct. App. Mar. 11, 2003) (plaintiff's unsubstantiated allegation that there was an unwarranted compilation of evidence which led to criminal charges being filed and subsequently dismissed for minimal evidence did not amount to extreme and outrageous conduct). More importantly, Kelley's conduct simply does not meet the high standard Plaintiff must show to succeed on this claim. Kelley reported what he saw. Defendant's actions in this case do not approach the appalling and abusive behavior described in other cases where this Court has found the conduct to be outrageous. See, e.g., Haverbush, supra (finding the defendant nurse's conduct toward the plaintiff/doctor was so outrageous in character and so extreme in degree that it went beyond all bounds of common decency in civilized society, for purposes of proving intentional infliction of emotional distress, where nurse left lingerie on doctor's vehicles and at his residence several times, left ax and hatchet on his vehicles after asking him how his fiancee would like to have an ax through her windshield, told co-worker that someone should "ice" the doctor, and sent a barrage of letters to the doctor, his daughter, and his future in-laws, in which the nurse called the doctor a compulsive liar, threatened his fiancee with physical harm, threatened to tell his colleagues that he had harassed her, and threatened to move in with the doctor even though he was engaged and would soon be married). The Court grants summary judgment to Defendants on this claim.

### 5. Gross negligence

The parties do not dispute that under Michigan law, an employee of a governmental agency acting within the scope of his or her authority is immune from tort

14

liability unless the employee's conduct amounts to gross negligence that is the proximate cause of the injury. Mich.Comp.Laws § 691.1407(2). Nor is there any dispute that Kelley was acting in the scope of his authority as a police officer while employed by the City of Warren, during the events at issue. Consequently, the only disputed issue is whether Kelley's conduct rises to the level of gross negligence. Here, the Court finds as a matter of law, his conduct was not "so reckless as to demonstrate a substantial lack of concern for whether an injury results." Maiden v. Rozwood, 597 N.W. 2d 817 (Mich. 1999).

Kelley conducted a fairly thorough investigation. The facts prompting the investigation would lead reasonable officers to believe someone was impersonating a police officer. Kelley did not rely solely on his observations. He further investigated the situation by calling Plaintiff. He contacted Plaintiff's current and former supervisors. Although Judge Gruenberg dismissed the charges, Kelley engaged in good police work. Because his conduct does not constitute gross negligence as a matter of law, this claim does not survive Defendants' request for summary judgment.

## IV.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's complaint in its entirety.

**IT IS SO ORDERED**.

                s/Marianne O. Battani  
                MARIANNE O. BATTANI  
                UNITED STATES DISTRICT JUDGE

Dated: February 27, 2007

**CERTIFICATE OF SERVICE**

      Copies of this Order were served upon Shawn J. Coppins and John Gillooly on this date by ordinary mail and/or electronic filing.

                                                s/Bernadette M. Thebolt
                                                    Deputy Clerk